IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TARA HOOKER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:09-CV-1289-D |
| VS. | § | |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this *pro se* action arising from the denial of special
education services for plaintiffs' son, defendants' motion to
dismiss presents questions concerning plaintiffs' standing, the
court's subject matter jurisdiction over some claims, and whether
plaintiffs have stated other claims on which relief can be granted.
The court must also decide whether to allow defendants to file a
counterclaim for sanctions.  The court concludes that defendants'
motion to dismiss should be granted, but it also grants plaintiffs
leave to replead.  The court denies defendants' motion for leave to
file a counterclaim for sanctions.

I

Plaintiffs Tara and Louis Hooker bring this *pro se* action
against defendants Dallas Independent School District ("DISD"),
Linda Tokoly ("Tokoly"), and Helen Norris ("Norris").  The Hookers

allege that their son, D___H___("D.H."),[1] was denied timely and adequate special education services at his DISD elementary school. According to their second amended complaint ("amended complaint"),[2] the Hookers requested a special education evaluation in the 2006-07 school year, and D.H. was evaluated in April 2007. They aver that, following "multiple violations of [DISD]," they filed in July 2007 a complaint with the Texas Education Agency ("TEA"),[3] the TEA issued its decision in October 2007, and they filed for a due process hearing in July 2008. The Hookers filed this lawsuit on July 8, 2009. They filed their second amended complaint ("amended complaint"), which is at issue here, in March 2010.

In relevant part, the Hookers allege that "[t]his case is about violations of parental civil rights that led to the denial of

---

[1]Fed. R. Civ. P. 5.2(a)(3) provides for the use of a minor's initials.

[2]In deciding defendants' Rule 12(b)(6) motion to dismiss, the court construes the Hookers' amended complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). As the court explains below, to survive the motion, the Hookers must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

[3]The TEA is a defendant in this case, but it is not a party to the motion to dismiss.

FAPE for their son. The plaintiffs are not representing their son but the rights provided parents under IDEA, Section 504, Section 1983, ADA and U.S. [C]onstitution." Am. Compl. 2. The reference to FAPE is to free, appropriate public education; the IDEA is the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 *et seq.*; § 504 refers to § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; § 1983 refers to 42 U.S.C. § 1983; and the ADA is the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Because the Hookers are proceeding *pro se*, the court construes the allegations of the amended complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The court therefore interprets the amended complaint to allege causes of action against DISD under the IDEA, Rehabilitation Act, § 1983, and ADA, and against Tokoly and Norris under § 1983.[4]

---

[4]The Hookers allege that Tokoly and Norris have violated the Hookers' due process and equal protection rights. They neither assert a violation of a particular law nor allege a § 1983 claim against Tokoly and Norris in their individual capacities. The court thus interprets the amended complaint to allege only a § 1983 claim against Tokoly and Norris in their official capacities.

A suit against a government official in her official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because the Hookers' claims against Tokoly and Norris in their official capacities are treated as claims against DISD, the court's analysis concerning

The first section of their amended complaint pertains to DISD, contains a bullet-point list of 14 allegations, and refers to materials attached to the amended complaint. The Hookers generally complain of DISD's special education evaluation procedures and its conduct during D.H.'s evaluation process.

The second section of the amended complaint makes allegations concerning Tokoly, who apparently works for DISD as a diagnostician. The Hookers allege that Tokoly lied to them about the requirements for disability and falsified D.H.'s evaluation, in violation of the Hookers' due process and equal protection rights.

In the third section, the Hookers aver that Norris, D.H.'s counselor and head of the student support team, lied to them, coerced them into signing consent forms, and retaliated against them when they complained to the school principal.

The Hookers request injunctive relief, monetary damages, punitive damages, and compensatory education in the form of private placement.

Defendants move to dismiss the Hookers' claims under Fed. R.

_____

concerning the Hookers' claims against DISD applies equally to their claims against Tokoly and Norris.

Alternatively, were the court to construe the amended complaint as alleging claims under the ADA, the Rehabilitation Act, and the IDEA against Tokoly and Norris individually, the court would grant defendants' motion to dismiss these claims because these laws are intended to prevent discrimination by public agencies, not by individuals. *See, e.g., D.A. v. Houston Indep. Sch. Dist.*, ___F.Supp.2d. ___, 2009 WL 6567045, at *6 (S.D. Tex. Aug. 14, 2009).

Civ. P. 12(b)(1), alleging that they lack standing and that they have failed to exhaust administrative remedies. Defendants also move to dismiss under Rule 12(b)(6) on the basis of the statute of limitations, and for dismissal of the claims against Tokoly and Norris on the ground that they cannot be held liable in their official capacities.

## II

The court turns first to defendants' contention that plaintiffs lack subject matter jurisdiction.[5]

### A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). If subject matter jurisdiction is lacking, the court must dismiss the suit. *See Stockman*, 138 F.3d at 151.

A party can challenge subject matter jurisdiction by making a facial attack or a factual attack. *See Paterson v. Weinberger*, 644

---

[5]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

F.2d 521, 523 (5th Cir. May 1981). If the party merely files its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* But a party can also make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *See id.; IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). If the movant provides evidence factually attacking subject matter jurisdiction, the nonmovant must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction. *See Paterson*, 644 F.2d at 523.

Defendants make both facial and factual challenges to the court's subject matter jurisdiction. Their facial attack asserts that the Hookers lack standing to sue on their own behalf under the ADA and the Rehabilitation Act, and under § 1983 to the extent that they allege violations of D.H.'s (not their own) constitutional or federal rights. Defendants also challenge subject matter jurisdiction on factual grounds as to all of the Hookers' claims, arguing that the Hookers have failed to exhaust administrative remedies for their claims not previously adjudicated in the due process hearing.

Defendants contend that the Hookers lack standing to sue DISD under the Rehabilitation Act and the ADA. They maintain, first, that the court should dismiss these claims under Rule 12(b)(1) based on the absence of constitutional standing. Defendants argue, second, that the Hookers have failed to allege that they are disabled or that they were discriminated against because of that disability. The second argument appears to challenge statutory standing——i.e., whether the statutes under which the Hookers sue provide rights of relief. Because courts afford statutory standing under the Rehabilitation Act and the ADA to the fullest extent permitted by the case or controversy provision of Article III of the Constitution, the court addresses both standing issues together. *See McCoy v. Tex. Dep't of Crim. Justice*, 2006 WL 2331055, at *6 (S.D. Tex. Aug. 9, 2006) (quoting *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 334 (6th Cir. 2002)).[6]

C

To satisfy the case-or-controversy requirement of Article III, the Hookers must show that they have "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a

_____

[6]In defining statutory standing as broadly as permitted by the Constitution, Congress eliminated any prudential standing barriers to maintaining an action. *See McCoy*, 2006 WL 2331055, at *6 (citing *MX Grp.*, 293 F.3d at 332-35).

favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be actual or imminent, concrete, and particularized. *Id.* at 167. Moreover, "the injury must affect the plaintiff[s] in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1. To survive a motion to dismiss, the Hookers must allege facts that give rise to a plausible claim of standing. *See Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).

The Hookers can establish statutory standing for associational discrimination under the Rehabilitation Act and the ADA by showing they were injured by prohibited discrimination against a disabled person. *See, e.g., Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 48 (1st Cir. 2000). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA is enforced by § 12133, which states: "The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of [the ADA]." 42 U.S.C. § 12133. Because the ADA adopts the remedial provision of the Rehabilitation Act, "jurisprudence

interpreting either section is applicable to both." *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) (alteration and citation omitted). The Hookers therefore have standing to sue under the ADA to the extent they have standing under the Rehabilitation Act.

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance" may bring suit under the Rehabilitation Act. 29 U.S.C. § 794a(a)(2). This includes non-disabled persons. *See Weber*, 212 F.3d at 48; *Glass v. Hillsboro Sch. Dist.*, 142 F.Supp.2d 1286, 1288 (D. Or. 2001) ("[T]o state a valid claim for associational discrimination under [the Rehabilitation Act and the ADA], a plaintiff must allege some specific, direct, and separate injury as a result of association with a disabled individual.") (internal quotation marks omitted); *cf. Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979) (holding that, where Congress has indicated that statutory standing extends to the limits of Article III standing, there are no prudential limits and, "as long as the plaintiff suffers actual injury as a result of the

defendant's conduct, he is permitted to prove that the rights of another were infringed." (housing discrimination case)).

To establish standing based on violations of D.H.'s rights under the ADA and Rehabilitation Act, the Hookers' injuries must be independent of D.H.'s injuries and must be causally related to the denial of federally-required services to D.H. *See Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 801 (7th Cir. 2008) (holding that plaintiff did not have constitutional standing where it only alleged injuries to its members, not to itself); *Blunt v. Lower Merion Sch. Dist.*, 262 F.R.D. 481, 486 (E.D. Pa. 2009) (holding that an abstract, ideological interest in the litigation, rather than a personal stake in the outcome, is not injury-in-fact). A plaintiff does not adequately plead standing if she only points to an injury to another person. *See Glass*, 142 F.Supp.2d at 1292. Parents who attempt to enforce only their children's rights do not have standing under the ADA or the Rehabilitation Act. *See id.* ("[Parent's] attempt to gain access . . . to the special education classroom related solely to their children's education, and was not an attempt to exercise some independent and separate right to have access to the classroom for their own benefit."); *see also L.F. v. Houston Indep. Sch. Dist.*, 2009 WL 3073926, at *21 (S.D. Tex. Sept. 21, 2009) (holding that parent did not have standing to pursue Rehabilitation Act claim on behalf of her child).

A parent who suffers retaliation after asserting the rights of a disabled child, however, has suffered a personal injury sufficient to establish standing to bring a Rehabilitation Act claim. *See Weber*, 212 F.3d at 44-49 (holding that plaintiff had sufficiently pleaded standing where she alleged that school district enacted retaliatory policy to "'put parent on defensive' and to 'shut her down,'" restricted plaintiff's access to school records, and threatened to report her to the state Department of Children, Youth and Family Services).

D

Construed liberally, the Hookers' amended complaint sufficiently alleges standing to assert Rehabilitation Act and ADA claims against DISD. The Hookers assert that, although they requested a special education evaluation for D.H., he was not evaluated during the 2006-2007 school year for special education services until April 2007, following numerous delays. It can be inferred from this allegation that it is plausible that D.H. is disabled and that he was denied federally-required educational services. The Hookers aver that DISD personally injured them through retaliatory acts: "Dallas ISD allowed employee to retaliate on the parents by using Child Protective Service intimidation against parent. This employee conducted child abuse interviews on plaintiff's children." Am. Compl. 2-3. The Hookers also allege that DISD retaliated by closing their TEA complaint. It is

therefore plausible that the Hookers have suffered injuries that are distinct from any injury to D.H.

The remainder of the Hookers' allegations essentially relate to D.H.'s right to free, appropriate public education and to defendants' alleged conduct during D.H.'s evaluation process. Because the Hookers do not allege that they were personally injured in a way distinct from any injury to D.H., they lack standing under the Rehabilitation Act or ADA to pursue these claims.[7]

E

Defendants maintain that the Hookers only have standing under § 1983 to sue based on alleged deprivations of their own constitutional or statutory rights, not D.H.'s rights, and that, as *pro se* litigants, the Hookers cannot represent D.H. In their amended complaint, the Hookers disclaim any intent to represent their son's rights: "[t]his case is about violations of parental civil rights that led to the denial of FAPE for their son. The plaintiffs are not representing their son but the rights provided parents under IDEA, Section 504, Section 1983, ADA and U.S.

_____

[7]The Hookers may have standing, however, under the IDEA to pursue both retaliation and non-retaliation claims. *See Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007) ("IDEA does not differentiate . . . between the rights accorded to children and the rights accorded to parents . . . . [A] parent may be a 'party aggrieved' for purposes of [IDEA] with regard to 'any matter' implicating these rights." (quoting IDEA, 20 U.S.C. § 1415(b)(6)(A) and (i)(2)(A))); *L.F.*, 2009 WL 3073926, at *13. Defendants do not challenge the Hookers' standing to pursue their IDEA claims.

[C]onstitution." Am. Compl. 2. Under § 1983, the Hookers have standing if they "clearly allege an injury to their own personal constitutional rights." *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1187 (10th Cir. 1985). Because the Hookers have alleged violations of their due process and equal protection rights (not D.H.'s rights), they have standing to bring their claims under § 1983.

III

The court now considers defendants' Rule 12(b)(1) motion to dismiss the Hookers' remaining claims under the IDEA, Rehabilitation Act, and ADA based on the alleged failure to exhaust administrative remedies. The Hookers allege that they "filed a due process hearing in July of 2008," Am. Compl. 1, but they also assert that "[t]his case is in no way limited to the issues of due process hearing held," *id.* at 2. The Hookers therefore concede that they have not exhausted their administrative remedies as required before filing suit under the IDEA.

A

The court must first determine whether the Hookers' claims are subject to the IDEA's exhaustion requirement. The IDEA provides "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of free appropriate public education to such child." 20 U.S.C.

§ 1415(b)(6)(A). In Texas, a party making such a complaint is entitled to a due process hearing conducted by the TEA. *See* 20 U.S.C. § 1415(f)(1)(A); 19 Tex. Admin. Code § 89.1151(b) (2010) (implementing one-tier review system under IDEA). A party "aggrieved by the findings" of the TEA may bring an action in state or federal court "with respect to the complaint presented pursuant to this section." 20 U.S.C. § 1415(i)(2)(A). Section 1415(i)(2)(A) thus limits a party's right of action under the IDEA to issues presented at the due process hearing. *See Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 655-56 (8th Cir. 1999).[8]

The exhaustion requirement is not limited to claims brought under the IDEA. Although the IDEA does not foreclose remedies under the Constitution or other laws, it does require "before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under [the IDEA's administrative review provisions] shall be exhausted to the same extent as would be required had the action been brought under [the

---

[8]The Hookers need not show that they exhausted administrative remedies if they "can show that the agency's adoption of an unlawful general policy or practice would make resort to the agency futile, or that the administrative remedies afforded by subchapter II of IDEA are inadequate given the relief sought." *Rafferty v. Cranston Pub. Sch. Comm.*, 315 F.3d 21, 25 (1st Cir. 2002) (quoting *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 52 (1st Cir. 2000)) (internal quotation marks omitted) [difference in name in original]; *accord Papania-Jones v. Dupree*, 275 Fed. Appx. 301, 303 (5th Cir. 2008) (per curiam). The Hookers do not rely on an exception to the exhaustion requirement.

IDEA]." 20 U.S.C. § 1415(l).

> "[A]vailable" relief [is] relief for the
> events, condition, or consequences of which
> the person complains, not necessarily relief
> of the kind the person prefers, or
> specifically seeks . . . . In essence, the
> dispositive question generally is whether the
> plaintiff has alleged injuries that could be
> redressed to any degree by the IDEA's
> administrative procedures and remedies.

*Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274

(10th Cir. 2000) (internal citations and quotation marks omitted).

"Where the IDEA's ability to remedy a particular injury is unclear,

exhaustion should be required in order to give educational agencies

an initial opportunity to ascertain and alleviate the alleged

problem." *Id.* at 1274.

All of the Hookers' claims relate to the educational placement

of D.H. and are therefore subject to the IDEA exhaustion

requirement. This includes the Hookers' retaliation claims brought

under the ADA and the Rehabilitation Act. *See, e.g., Sch. Bd. of

Lee Cnty. v. M.M. ex rel. M.M.*, 348 Fed. Appx. 504, 511-12 (11th

Cir. 2009) (holding that plaintiffs' retaliation claims related to

free appropriate public education guaranteed by the IDEA and thus

were subject to the IDEA's exhaustion requirement); *Wood v. Katy

Indep. Sch. Dist.*, 2009 WL 2485967, at *3-4 (S.D. Tex. Aug. 6,

2009) (dismissing plaintiffs' claims, including retaliation claim,

because they were all based on facts involving, and relief

available under, the IDEA); *Miller ex rel. JH v. W. Feliciana*

*Parish Sch. Bd.*, 2008 WL 4291168, at *3 (M.D. La. Aug. 11, 2008) (dismissing plaintiff's ADA, Rehabilitation Act, and IDEA claims for retaliation because plaintiff did not exhaust administrative remedies).[9]

B

The Fifth Circuit has interpreted the IDEA's exhaustion requirement to be jurisdictional. *See Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992) ("[A] complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies[.]");[10] *see also Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."). The court acknowledges that the Supreme Court has in recent years indicated that "claims-processing" rules should not be considered jurisdictional absent clear legislative intent. *See Reed Elsevier, Inc. v. Muchnick*, ___ U.S.___, 130 S.Ct. 1237, 1245-47 (2010) (holding that Copyright Act registration requirement is

_____

[9]That the Hookers request monetary damages does not change the exhaustion requirement. *See Polera v. Bd. of Educ.*, 288 F.3d 478, 488 (2d Cir. 2002) ("The fact that [plaintiff] seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA.").

[10]Although the IDEA has been amended since *Gardner*, the same exhaustion requirement still applies. *See Flores v. Sch. Bd. of DeSoto Parish*, 116 Fed. Appx. 504, 511 n.26 (5th Cir. 2004) (per curiam).

not jurisdictional); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516

(2006) (holding that employee-numerosity requirement of Title VII

is non-jurisdictional); *Kontrick v. Ryan*, 540 U.S. 443, 450-51, 454

(2004) (holding that time-bar to creditor's objection to discharge

of debtor is not jurisdictional but rather should be described as

a defense).[11]  But neither the Supreme Court nor the Fifth Circuit

has addressed whether the IDEA's provisions are jurisdictional.[12]

Because *Gardner* is binding,[13] the court holds that the exhaustion

---

[11]Some circuits have acknowledged these Supreme Court cases but have not changed the characterization of statutory requirements as jurisdictional. *See In re Latture*, 605 F.3d 830, 831-32 (10th Cir. 2010) (dismissing bankruptcy appeal for lack of jurisdiction but acknowledging that *Kontrick* and its progeny "prompt us to reexamine" whether failure to file timely notice of bankruptcy appeal is jurisdictional defect); *Fed. Nat'l Mortg. Ass'n v. United States*, 469 F.3d 968, 972-73 (Fed. Cir. 2006) (holding that *Arbaugh* did not change whether statute of limitations was jurisdictional because "[t]hese cases are not pertinent because they do not address whether, in cases against the government, limitations periods are jurisdictional[.]").

[12]After *Kontrick* and *Arbaugh* were decided, the Tenth Circuit dismissed an IDEA claim for lack of subject matter jurisdiction for failure to exhaust. *See Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1279 (10th Cir. 2007); *see also Payne v. Peninsula Sch. Dist.*, 598 F.3d 1123, 1124-25 & 1124 n.2 (9th Cir. 2010) ("It is unclear whether the failure to exhaust is still a jurisdictional matter[.]").

[13]District courts must follow "a legally indistinguishable decision of the Fifth Circuit . . . unless overruled *en banc* or by the United States Supreme Court." *MCI Telecomms. Corp. v. United Showcase, Inc.*, 847 F. Supp. 510, 512 (N.D. Tex. 1994) (Fitzwater, J.) (citation omitted).  After *Kontrick* district courts in this circuit have followed *Gardner* and viewed the exhaustion requirement as jurisdictional. *See Bynum v. W. Baton Rouge Parish Sch. Sys.*, 2010 WL 3523055, at *3 (M.D. La. Aug. 31, 2010); *M.L. v. Frisco Indep. Sch. Dist.*, 2010 WL 3430696, at *3 (E.D. Tex. Jun. 15, 2010); *L.F.*, 2009 WL 3073926, at *14-15; *Newsome v. Miss. High Sch.*

requirement of the IDEA is jurisdictional.[14]  The court therefore

dismisses plaintiffs' IDEA, ADA, and Rehabilitation Act claims for

lack of subject matter jurisdiction.[15]

C

Even if *Gardner* is no longer binding in light of *Reed

Elsevier*, *Arbaugh*, and *Kontrick* and the court has subject matter

jurisdiction, the Hookers have not stated a claim on which relief

can be granted.

Under Rule 8(a)(2), a pleading must contain "a short and plain

statement of the claim showing that the pleader is entitled to

relief."  While "the pleading standard Rule 8 announces does not

require 'detailed factual allegations,'" it demands more than

"'labels and conclusions.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).  And "'a formulaic recitation of the

elements of a cause of action will not do.'"  *Id*.  (quoting

*Twombly*, 550 U.S. at 555).  "The court does not, however, 'rely

upon conclusional allegations or legal conclusions that are

---

*Activities Ass'n*, 2008 WL 2686579, at *2 (N.D. Miss. Jul. 8, 2008);
*Plumbly v. Ne. Indep. Sch. Dist.*, 2006 WL 2469169, at *3 (W.D. Tex.
Aug. 17, 2006).

[14]The effect of the court's decision is the same regardless
whether it deems the exhaustion requirement to be jurisdictional or
an element of the Hookers' claim.

[15]Because the court is granting defendants' motion to dismiss
for lack of subject matter jurisdiction, it need not address their
limitations defense.

disguised as factual allegations.'" *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001)).

In deciding a Rule 12(b)(6) motion, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

The IDEA grants a right of action only to those who have exhausted available administrative remedies, and it precludes a right of action under other statutes if the action could have been brought under the IDEA. *See supra* § III(A); 20 U.S.C.

§ 1415(i)(2)(A) ("Any party aggrieved by the [administrative findings] . . . shall have the right to bring a civil action[.]"); *see also M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1159 (11th Cir. 2006) ("To pursue claims for retaliation, the plain language of the IDEA required Appellants to . . . exhaust all administrative remedies regarding that complaint before filing a judicial action."); *A.T. v. Leflore Cnty. Sch. Dist.*, 2010 WL 1506974, at *1-2 (N.D. Miss. Apr. 14, 2010) (dismissing plaintiff's IDEA claims because complaint "does not allege sufficient facts to show that she has exhausted her administrative remedies."). "Under the Rule 12(b)(6) standard, it is well settled that in order for a defendant to prevail [on an affirmative defense] at the pleadings stage, the plaintiff must normally plead itself out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. Jul. 29, 2009) (Fitzwater, C.J.) (citations and quotation marks omitted). As noted above, the Hookers explicitly allege in their amended complaint that they filed a due process hearing in July 2008 but that their lawsuit "is in no way limited to the issues of due process hearing held." Am. Compl. 2. The Hookers have therefore affirmatively pleaded that they have not exhausted their administrative remedies as required before filing suit under the IDEA. Merely alleging the occurrence of a due process hearing is insufficient; they must plead that each issue was administratively exhausted. *See M.T.V.*, 446 F.3d at

1159.  The Hookers have therefore failed to allege facts from which

the court can reasonably infer that DISD can be held liable for any

IDEA, ADA, or Rehabilitation Act violation that the Hookers allege.

*See, e.g., Dohmen ex rel. Dohmen v. Twin Rivers Pub. Schs.*, 207

F.Supp.2d 972, 990 & n.25 (D. Neb. 2002) ("[P]laintiffs' concession

that their administrative remedies have not been exhausted is

sufficient to permit the granting of the defendants' motion to

dismiss the complaint for failure to state a claim.").  The court

therefore grants defendants' motion to dismiss plaintiffs' ADA,

Rehabilitation Act, and IDEA claims.[16]

IV

The court now considers whether the Hookers have stated a

§ 1983 claim on which relief can be granted.[17]

---

[16]Although the Hookers' § 1983 claims are also subject to the
IDEA's exhaustion requirement, *see Wood*, 2009 WL 2485967, at *3-4,
the court is dismissing these claims on the merits rather than for
lack of exhaustion.  *See infra* § IV.

[17]Defendants move to dismiss the Hookers' § 1983 claims based
on limitations, but the court will instead dismiss the claims for
failure to state a claim on which relief can be granted.  "This
court may dismiss a case for failure to state a claim even if it
does so based on arguments that defendants did not themselves
raise." *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F.Supp.2d
628, 633 (N.D. Tex. 1999) (Fitzwater, J.) (citing *Guthrie v. Tifco
Indus.*, 941 F.2d 374, 379 (5th Cir. 1991)).  "Even if a party does
not make a formal motion, the court on its own initiative may note
the inadequacy of the complaint and dismiss it for failure to state
a claim as long as the procedure employed is fair." *Id.* (quoting
5A Charles A. Wright & Arthur R. Miller, *Federal Practice &
Procedure* § 1357, at 301 (footnote omitted)).  Because the court is
granting the Hookers leave to replead, *see infra* § V, this
procedure is fair because the Hookers will have an opportunity to
cure the defects in their § 1983 claims if they can.

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Dallas Indep. Sch. Dist.,* 557 F.Supp.2d 755, 761 (N.D. Tex. 2008) (Fitzwater, C.J.) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)), *aff'd*, 370 Fed. Appx. 455 (5th Cir. 2010). The Hookers have not clearly identified the constitutional or statutory predicate for their § 1983 claim. Construing the amended complaint liberally, the Hookers allege that DISD violated the Rehabilitation Act, the ADA, and the IDEA, and violated their due process and equal protection rights. The court will assume that the Hookers base their § 1983 claim on alleged violations of these rights.

B

Plaintiffs cannot state a § 1983 claim based on alleged violations of the Rehabilitation Act, the ADA, or the IDEA because each of these laws provides a comprehensive remedial scheme through which plaintiffs can obtain relief.

> As a general rule of statutory construction, a statute that affords a remedy for specific wrongs, and which is comprehensive enough to embrace subjects that may fall within the ambit of a general statute, should prevail over the general statute as a vehicle for enforcing those specific statutory rights. Furthermore, a comprehensive remedial scheme

> for the enforcement of a statutory right
> creates a presumption that Congress intended
> to foreclose resort to more general remedial
> schemes to vindicate that right.

*Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (citations omitted). In *Lollar* the court held that § 1983 liability cannot be based on a violation of the Rehabilitation Act. *See id.* at 610. The ADA and the IDEA provide similarly-comprehensive enforcement regimes and thus cannot be bases for § 1983 liability. *See, e.g., A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803 (3d Cir. 2007) (en banc) ("Given [the] comprehensive scheme [of the IDEA], Congress did not intend § 1983 to be available to remedy violations of the IDEA such as those alleged by [plaintiff]."); *Pena v. Bexar Cnty.*, ___ F.Supp.2d ___, 2010 WL 2545418, at *11 (W.D. Tex. Jun. 21, 2010) ("The Court therefore concludes that Plaintiff's claims against [defendant] under section 1983 for violations of Title II are precluded by the comprehensive enforcement scheme of the ADA.").

C

The Hookers have also failed to allege a plausible § 1983 claim based on violations of their rights to due process or equal protection. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "[The Supreme Court has] recognized successful equal

protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cty.*, 488 U.S. 336 (1989)). But "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action——even if irrational——does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (internal quotation marks omitted) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)). The Hookers do not allege that they belong to a protected class or that they were treated differently from others similarly situated.

The Hookers have also failed to allege a plausible violation of their due process rights. Although municipalities are "persons" who can be held directly liable under § 1983, they cannot be held liable on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978). Likewise, DISD, as a "local governmental unit," does not have *respondeat superior* liability under § 1983. *See Moore*, 557 F.Supp.2d at 761 (quoting *Leffall*, 28 F.3d at 525). Rather, § 1983 liability obtains only "when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell*, 436 U.S. at 694; *see also Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006) ("Normally, a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail." (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989))).

The Hookers allege 14 grounds for relief against DISD, each listed as a separate bullet point.[18]  In the fifth,[19] sixth,[20]

---

[18]Although some of the Hookers' points do not explicitly allege a violation of due process rights, the court will examine whether any of them alleges grounds for a § 1983-based due process claim.

[19]The Hookers allege in the fifth point that a DISD employee retaliated against them by reporting child abuse:

> Dallas ISD allowed employee to retaliate on the parents by using Child Protective Service intimidation against parent.  This employee conducted child abuse interviews on plaintiff's children.  The employee submitted to the district a status of hours from her employee file where i[t] states she worked on CPS cases see exhibit C-20&C-13.  The employee was not investigated nor did the principal of the school stop her conduct.  State law and school policy prohibit[] such conduct[;] however it was allowed and the employee was compensated for overtime pay for "working cps cases."

Am. Compl. 2-3.

[20]The Hookers also allege retaliation in their sixth point.

> Dallas ISD retaliated on the plaintiffs by having the TEA complaint case closed that Ms. Hooker filed.  The district stated to the TEA

- 25 -

seventh,[21] eighth,[22] ninth,[23] tenth,[24] eleventh,[25] thirteenth,[26] and

---

> that they did not receive plaintiffs['] letter
> and the plaintiff did not state what relief
> she wanted.  However, the district did receive
> the letter and the plaintiff did state what
> relief she wanted from the district.  See
> exhibit C-2[.]

Am. Compl. 3.

[21]The seventh point alleges:

> The Dallas ISD knew the evaluation for D.H.
> was restarted and no one informed the
> plaintiffs.  See exhibit C-22&A-2.  Several
> district supervisors reviewed D.H.['s] file
> and fail[ed] to inform the plaintiffs.  This
> was a violation of due process and equal
> protection rights.  The district had a legal
> responsibility to find out who restarted the
> process and why Linda Tokoly the diagnostician
> did nothing to inform the plaintiffs.

Am. Compl. 3.

[22]In their eighth point, the Hookers allege insufficient notice
of the evaluation procedure: "Dallas ISD prior written notice does
not contain sufficient description of evaluation procedure.  The
three tier Response to Intervention model should be listed on the
notice.  The lack of sufficiency violates the plaintiff's due
process rights."  Am. Compl. 3 (citations omitted).

[23]The ninth point asserts: "Dallas ISD did not give prior
written notice before referral to special education 11/8/2006."
Am. Compl. 3.

[24]In the tenth point, the Hookers allege that they were not
invited to a meeting in which D.H. was referred:

> The plaintiffs were not invited [to] the
> November SST meeting in which referral for
> D.H. took place 11/8/2006.  This violates the
> parent['s] right to participate in all
> meetings involving identification, evaluation,
> and placement(300.501).  The parents were not
> invited to any of the meetings after the

fourteenth[27] bullet points, the Hookers do not identify any DISD policy or custom that caused them injury. Therefore, the conduct alleged in these bullet points cannot support a § 1983-based due process claim.

Likewise, the Hookers cannot base their due process claim on the conduct alleged in the remaining bullet points because these points do not specify the content of a discriminatory policy or custom or point to any property interest of which the Hookers were deprived without due process.[28]

"In a section 1983 cause of action asserting a due process

---

initial meeting 9/13/2006. This violates parent's due process rights.

Am. Compl. 3-4.

[25]In their eleventh point, the Hookers aver that DISD withheld evidence from the TEA: "The district knew that there was evidence that supported the mother's complaint and withheld it from the TEA. The SST documents were full of contradictory information. The act of withholding the documents was retaliation on the plaintiffs." Am. Compl. 4.

[26]The thirteenth point states: "Dallas ISD submitted to TEA a different version of FIE than was given to parents. The district supervisors of Ms. Tokoly approved of altering the evaluation in retaliation for Ms. Hooker filing a TEA complaint." Am. Compl. 4.

[27]The fourteenth point states: "Dallas ISD did not have the data required to make [the] special education referral. The violation of parental rights occurred due to employees['s] attempt to cover-up for failure to execute response to interventions correctly." Am. Compl. 4.

[28]The fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth, and fourteenth bullet points also fail to explain the property interest of which the Hookers have been deprived.

violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). The deprivation of a liberty or property interest is fundamental to both substantive and procedural due process claims. *See, e.g., Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes[.]" *Blackburn*, 42 F.3d at 936-37 (citing *Perry v. Sindermann*, 408 U.S. 593, 599-601 (1972)). In the first,[29] second,[30] third,[31] fourth,[32]

---

[29]The first point alleges: "The district's referral policies denied the plaintiffs['] right to receive procedural safeguards at parent request for an evaluation. Dallas ISD policy discriminates against parents." Am. Compl. 2 (citations omitted).

[30]The second point alleges: "Dallas ISD failed to train Student Support Team person[nel]. Team did not know how to carry out interventions or document SST activities on correct forms. Incompetence of team resulted in violation of parent's due process right and denial of FAPE for the student." 2d. Am. Compl. 2. It is unclear whether this allegation is directed toward a DISD policy or practice. The court will assume *arguendo* that this point alleges a due process violation based on a policy or practice.

[31]The third ground alleges: "Dallas ISD failed to train ARD committee. Committee did not know the state and federal criteria for disability. No one knew that diagnostician was wrong in her diagnosis resulting in violation of parents['] civil rights." Am. Compl. 2. The court will also assume *arguendo* that this point alleges a due process violation based on a policy or practice. *See supra* note 30.

[32]The fourth point alleges: "The district referral policies denied the plaintiffs the right to receive documentation regarding Response to Interventions. The district violated the plaintiff's

and twelfth[33] bullet points, the Hookers allege (or the court will assume *arguendo* that they allege) that a DISD policy or practice deprived them of their due process rights, but they fail to specify the contents of the policy and the interest deprived. They also fail to point to a state law that guarantees any particular property interest. *See Blackburn*, 42 F.3d at 936-37 ("[T]he sufficiency of the claim of entitlement must be decided by reference to state law."). The court therefore dismisses the Hookers' § 1983 claim for failure to state a claim on which relief can be granted.[34]

---

due process and equal protection rights." Am. Compl. 2 (citation omitted).

[33]The Hookers allege in the twelfth point that DISD's special education evaluation criteria are inaccurate:

> [DISD] evaluation criteria [are] inferior and violated the parents['] right to have their child receive a comprehensive evaluation as is required by federal law. [DISD] method I 16 point discrepancy to determine disability. This method alone is not sufficient to qualify or disqualify a student for special education services. This is a violation of section 504. See exhibit C-23.

Am. Compl. 4. In this ground, the Hookers refer to the Rehabilitation Act, but the court has held that a violation of the Rehabilitation Act cannot be the basis for a § 1983 violation. *See supra* § IV(B).

[34]The court also dismisses the Hookers' § 1983 claims against Tokoly and Norris in their official capacities. A suit against a government official in her official capacity is a suit against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Waltman v. Payne*, 535 F.3d 342, 349 (5th Cir. 2008).

V

Because the Hookers are proceeding *pro se*, the court will grant them leave to replead. *See, e.g., Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008) (Fitzwater, C.J.) (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D, slip op. at 7 (N.D. Tex. Sept. 13, 1988) (Fitzwater, J.)).

VI

Finally, the court considers defendants' motion for leave to file counterclaim.

Defendants' proposed counterclaim asserts Rule 11 as grounds for relief. Rule 11 does not create a cause of action that may be presented by counterclaim. *See, e.g., Lenoir v. Tannehill*, 660 F. Supp. 42, 43-44 (S.D. Miss. 1986) ("It appears clearly beyond question that Rule 11 by its express terms only permits an attorney procedurally to raise a claim for sanctions through a motion."); *see also Jackson v. Betts Indus., Inc.*, No. 3:93-CV-1185-D, slip op. at 7-8 (N.D. Tex. Nov. 5, 1993) (Fitzwater, J.) (same). The court therefore denies the motion.

*     *     *

Defendants' April 5, 2010 motion to dismiss is granted.  The Hookers are granted leave to file an amended complaint, and they must do so within 30 days of the date this memorandum opinion and order is filed.  Defendants' May 25, 2010 motion for leave to file counterclaim is denied.

**SO ORDERED.**

October 13, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE